May it please the Court, my name is Mark Topel. I appear on behalf of Appellant Howard Vogel. Your Honors, the key issue, at least the key beginning of the many issues that are presented in this matter, is whether or not the judge's findings below concerning what facts were concerning criminal conduct by the government's main witness, Stephen Abelman, before, during, and after Mr. Vogel's trial. Well, the Court concluded it was after, so you're saying that was the error, right? That's one of the errors, and it clearly was not after, and I believe that... Can I ask you a more fundamental question? Yes, sir. At the time, during the trial, Abelman, in terms of cross, the cross showed he obtained numerous sets of false identification documents, opened bank accounts, created false documents detailing his business, destroyed incriminating evidence, made false statements to police, falsified tax records, lied under oath at a judicial proceeding, I think it was in Portugal, lied under oath in a civil lawsuit, stole money from his drug trafficking associates, not good if you have life insurance or unless you have life insurance, and lied to police. And you're saying this one transaction, whenever it occurred that he lied about the $36,000, that was going to change the whole result of the trial? I'm saying two things. Number one, that there wasn't just one transaction, there was a whole series of transactions that occurred before and during the Vogel trial and after, which showed that during the time that he was telling the government and the jury that he was behaving, that he was being honest, that he was complying with his plea in a series of money laundering transactions. And I don't believe that anything in the impeachment evidence at the trial concerned contemporary matters that were going on while he was testifying as opposed to historical matters. Moreover, I don't believe that the record and the case law indicates that where a central witness is lying about a non-insignificant thing, which is not of a minor type, that the cumulative standard should apply. We're talking about what we call the relaxed standard. But just for a moment, Your Honor, I would like to address that factual issue, because I think it's very, very – it's been completely misstated by the government, and I think that the court below was entirely wrong in its conclusion. Well, don't sugarcoat it. What do you think? Okay. The important thing is, is that – The jury here – yeah, go ahead. Well, it's critical because it does inform the various – I mean, I agree – well, I don't know whether you agree. I shouldn't say that. The standards that could be applied here are several in evaluating this, and they blend into each other depending on the facts. The critical point of the facts here is that two months before the Vogel trial, a property that was subject to forfeit by the United States was sold by Abelman through an agent named Gold, who secretly kicked back money to him. He then took that money – and this is before Vogel's trial – he took that money, he put some of it in his wife's account, and then he admitted that that money was put there to hide it from the government. That's money laundering. He also admitted that the rest of the money was concealed scheme whereby he created the same thing that he accused Vogel of doing when he testified against Vogel, creating receipts, creating false sales. And he also submitted subsequently to the prosecution bank statements that went back in time, where he says that these – what I said was legitimate income wasn't. This is an active criminal guy who's operating during the Vogel trial and complete contrary to his promises, to his testimony. And what makes it even worse is that the government in its closing argument actually said that Mr. Abelman should be believed, and I quote, he was given a good deal, but Mr. Abelman is the only person who was under a plea agreement with the United States bound to tell the truth. He was the only one in that situation who was on the team. Now, there is no question that the money that was involved, that was being deposited secretly before the Vogel trial, was forfeitable money. We have cited the evidence. It's at the record at 787. This is proceeds from a forfeited property. The government argued to you in their appellate brief, and even though they have now conceded for the first time that events did occur before the Vogel case, they did not intend to disguise the true source of the funds or hide the accounts into which they were deposited. That's ridiculous argument, given the scheme that he did of putting it in his wife's account, given the scheme that he did to cover it up. So we start with the premise that he lied about a series of fraudulent  conduct that was going on contemporaneously with his testimony before and after his testimony in the Vogel case that was not disclosed. Of course, it couldn't be disclosed. It was hidden. It wasn't learned until later. There's no argument that this is newly discovered evidence. And that once it was disclosed, and once we have established it at the hearing, then how that weighs into the various ---- Sotomayor, when you say there's no argument that this is newly discovered evidence, it's newly discovered information. Yes, that's correct. Would not his ---- well, okay, I'm sorry, Your Honor, I don't want to cut you off. But it's about something that happened after the trial. No, it is not. That's the point I'm ---- That's the ---- that's the ---- But the record here is very clear that between June and August of 2002, one month before the Vogel trial, these sales occurred. This money was generated. This money was then deposited in disguised ways into the bank. It did ---- and furthermore, Judge Schroeder, I would point out that many of the cases don't talk about the activity that causes the new trial occurring before the trial or during the trial. I mean, Williams, Chisholm, Mesa Roach, Davis, those are all activity that occurs after the base trial. So I don't know whether Judges Walker's point on that, which I think was absolutely factually, totally incorrect, whether or not legally it's of any relevance whatsoever. But if it were to be of relevance, it's not correct. The criminal activity ---- it's what the government did, is looked at what he did to conceal the case with the probation as opposed to what generated ---- what the transactions below themselves were in terms of ---- This is creating the false financial statements. In effect, the offense that you're alleging and talking about, Abelman II, if you will, was creating the false financial statements for the probation department. Only in part. Money laundering. 1341, 1343, 371, because he worked with two other people. But basically, if you look at the model pattern instruction for money laundering, which in the Ninth Circuit, 8.121, this is clearly money laundering. If you take money that you know is drug money, which he knew, or substitute drug money. Alito, the district court didn't make a finding everything was drug money, did it? There was some question about commissions, real estate, et cetera, was there not? Real estate commissions, because it's not his real estate. For loans, loan proceeds. Well, there was no evidence whatsoever that Mr. Gold, when he ---- I think it's ---- I have the record reference for you. It's at page 787. When Mr. Gold was interviewed by the DEA, and at 787, he talked about these properties being that the money that Gold sent, which was secreted, was sent from ---- money Gold sent to Abelman, which was secreted, was the results of the property sales of the forfeited property where he split his commission. It wasn't ---- there's nothing when a criminal forfeits his property in the United States. He's not entitled, then, when the property is sold, to have a sweetheart deal with the real estate agent where he gets kicked back half the money. It's not his. And, in fact, in the Abelman 1 plea agreement, Abelman absolutely gave up the right to any interest and pledged that he would actively, in good faith, make sure, to any interest in that property. So the bottom line ---- the bottom line that ---- that here is that this was forfeitable property. He had no right to it. And according to the evidence we have from the source of the money, this wasn't the result of loans. It wasn't the result of him doing legitimate activity or selling jewelry. It was the result of a secret kickback of the funds that were from forfeited property. Now, in that situation, I believe we should have, at the very least, been entitled to look at what the probation office was presented in terms of the actual discovery of the statements. Because on those statements, we would be able to show, although I think that we have certainly gone far beyond speculation in showing a committed crime, we would be able to show the whole series of crimes. And then the question becomes, what jury, looking at Abelman, who was by ---- without dispute the central witness in this case, what jury is going to credit his testimony if they see that he is actively committing crimes that under his plea agreement he says he's not going to be committing at the time he's supposedly telling the truth? When you turn to the actual legal standards, I think that it's very important that what Mr. Abelman was doing, the degree to which his conduct was central to a judgment, the fact that it's impeachment doesn't mean it's not also material. As you know, under the case of particularly the Davis case, if it is of such a moment, then it becomes material. And I believe that if the star witness for the government is testifying that they are cooperating with the government and they are describing that Howard Vogel did a series of criminal conduct with them, which is identical to the criminal conduct unknown to the government the star witness is doing at the very same time, that the defense will have an argument and should have an argument for the jury, not only is this guy a craven liar who am criminal, but he is attributing bad conduct to the defendant in the case in return for whatever rewards he's getting, in this case were very substantial, and that that is substantive evidence that the jury could, in response to your information evidence question, Judge Schroeder, this is substantive evidence the jury should have been entitled to weigh. So, Your Honors, I will – I would like to reserve the rest of my time at this time unless you have some questions. You may do so. Thank you. Thank you very much. Good morning. May it please the Court. I'm Amber Rosen representing the United States in this matter. In making his claim for new trial, defendant, as you heard, relies heavily on his finding that the newly discovered evidence occurred post-trial was clearly erroneous. So I want to spend a moment explaining why it was not, and then address why he hasn't met the standard for obtaining a new trial. What happened was that sometime before trial, around the summer of 2002, Abelman received $36,000 from Ken Gold. Ken Gold was the broker for the sale of one of Abelman's properties that was being sold so that the proceeds could go to the government. Ken Gold, however, was legitimately the broker on that and was legitimately entitled to earn a commission, which he did. Therefore, his commission on the sale of the property, even though the profit of that or the net was supposed to go to the government, Ken Gold was legally entitled to receive those proceeds, and they are not drug proceeds or tainted substitute drug proceeds, and there was no money laundering with respect to Gold obtaining that money for the commission from the sale. What Gold then chooses to do with it cannot retain the money, or at least there's no cases and no support that the defendant has cited to suggest that when someone legitimately earns money, that them giving it to someone else who was earlier involved in maybe generating drug proceeds, it becomes retainted and therefore drug proceeds vis-a-vis Abelman. The fact is they were not drug proceeds when earned by Gold, and his giving them to Abelman does not reconvert them into drug proceeds. So I think the district court was correct that there was no – that the evidence supported that Abelman's receipt and deposit of the funds prior to Vogel's trial did not constitute additional crimes, and that the criminal conduct occurred beginning in November of 2002 after Vogel's trial when Abelman then lied to the probation office about what the source of the $36,000 was. So that's the conduct that we're talking about. The district court had an evidentiary basis for making its ruling based on Gold's and Abelman's statements about the source of the money and the lies to probation occurring in November in 2002, and that finding should not be disturbed. Moreover, it means that the court's finding that the government engaged in no misconduct for having said that the criminal conduct occurred after trial should also not be disturbed. The question then becomes, does Abelman's post-trial conduct warrant a new trial? And the answer to that is no. And let me just say we believe even if the defense's version of the conduct or the timing of it is credited, that still it does not warrant a new trial. And that is – That version was before the district court, correct? Yes. Yes. That was their argument to the district court. And it would have had no impact. Excuse me? And the district court concluded it would not have impacted the verdict. That's true. And the reason is, in order to get a new trial based on newly discovered evidence, the evidence needs to not be merely cumulative or impeaching. It needs to be material to the issues involved, and it needs to have – its introduction would have to probably produce an acquittal, and defendant cannot meet the burden on any of those prongs. And so the fact is, as this Court recognized, the evidence was merely cumulative. The fact is, the jury – and I think this is the most significant aspect of the impeaching evidence, although, as the Court indicated, there was lots of it – during the trial, some of the impeachment evidence was not purely historical. The jury was told that even after Abelman entered into his plea agreement with the government, even after he had promised to tell the truth, that he then lied to law enforcement officers from Australia. So they knew that he had made lies even after entering his plea agreement, and that he had continued to be unreliable. And not only did he lie to them after entering the plea agreement, but the lies were falsely exaggerating Vogel's involvement in the offense. What he lied to the Australian law enforcement officers about was he said that he had received approximately $600,000 in drug proceeds from Razek, I believe, and that he then gave that $600,000 to Vogel. He admitted at trial that was a lie. He had kept the $600,000 for himself. So the lie involved falsely implicating Vogel. So the jury was aware that he had done that, and that he had done that even though he had promised to cooperate with the government. So the idea that this, then, lying about $36,000 to protect his own assets, which had nothing to do with Vogel, would somehow change the jury's finding of Abelman I think is just not supported by the record. Moreover, as the Court already indicated, the jury also knew that he was a large-scale drug dealer, smuggling drugs, laundering millions of dollars, had lied under oath to a magistrate judge, had destroyed evidence, had tried to get others to destroy evidence. So I don't think that he had been receiving $10,000 a month in living expenses from his drug proceeds with the consent of the government during this time and during the trial. So I really think that there is the finding that this evidence is merely cumulative, is strongly supported by the record. Now, we always see these cases through the perspective of the issues being raised at the time, but I couldn't help but wonder as I read through here, and you're lying so-and-so he must be, how did he persuade the jury to believe anything he said? Well, Your Honor, I think that goes to the next point, which is why this evidence also would not probably result in acquittal. And that is, despite the defense's characterization, there was significant corroborating, independent corroborating evidence at trial. The bank records alone were incredibly damning of Vogel and his knowledge that he was laundering illegal proceeds. He had hundreds of thousands of dollars flowing through foreign bank accounts, most of which were not held in his name. One of the people whose name the account was held in and who was managing the money, Koshard, also testified that he never, except when closing out the account at the very end, gave any money, any of that money directly to Vogel, but Vogel would direct him to give that money to third parties. We know that the source of the money in Vogel's foreign accounts were primarily from the Habib Bank, the Middle East Bank, and one of Abelman's accounts in Australia, as well as cash. We know that Vogel had no legitimate source of income during the years of questioning, did not file any tax returns during the years in questions, had no records of these accounts at his home when they executed the search warrant that he had told Ms. Canario that one of the Swiss bank accounts was his and then told her not to tell anyone about it or she should watch her back. He had his attorney, Harper, who had sent Mr. Hereford, testified that he had been sent a check from Vogel's attorney for $250,000 from an account in Geneva and that Harper had asked Mr. Hereford to destroy the check because if it got in the wrong hands, he could get in trouble. This was all independent evidence corroborating his knowledge of the illegality of the money that was going through his accounts. Moreover, just one other strong piece of corroborating evidence was Abelman's girlfriend, Ms. Lindgren, testified that when she was in Europe, in Geneva, with Abelman in mid-1996, she saw Abelman with approximately a million dollars' worth of Deutschmark currency, which he told her he was giving approximately $600,000 worth of to Vogel. Agent Fox then testified from the bank records that Vogel had approximately $600,000 worth of Deutschmark currency deposits in his Geneva account between July and October of 1996. When viewed in light of all the other impeachment evidence that the jury heard about Abelman and in light of some of the significant corroborating evidence of Abelman's implication of Vogel, I think that Abelman's line to probation to prevent the forfeiture of $36,000 the district court properly found was cumulative, merely impeaching, and unlikely to change the outcome of the trial. I want to also just take a moment to correct something that defense counsel said about the legal standard. Even if Abelman had lied at trial about being in compliance with his plea agreement, that still would not trigger any kind of lower standard in terms of determining whether a new trial is warranted. The Krasny decision specifically held that it was not going to apply any different or lower standard when a government witness was found to have perjured themselves at trial. That was the specific explicit holding of Krasny, and it said, instead, apply this five-part test, including the test for probably, would it have probably resulted in an acquittal. If the Court has no further questions, I'll submit it on that. Thank you. Roberts, for the first time in the course of this proceeding, the argument was raised by the government that somehow the money that Mr. Abelman received through his secret deal with the real estate is somehow not forfeitable money. In his plea agreement, I think that argument is flatly wrong, and I'll tell you why. In his plea agreement, he gave up any right to any of the forfeitable property, proceeds from, et cetera, et cetera. It's as if somebody who has drug money can put it through some sort of regular sale, make a side agreement to receive some benefit from it, because the person who is getting whatever their regular commission is somehow is willing to split it with them. I think that's an argument that is both illogical and unprecedented in, as I understand it, substitute money jurisprudence in this district. That money arose from drug-related property. It didn't belong to Abelman. Abelman had no right to it. Again, I don't think that that critically makes any difference, ultimately, because the question is, the question is, is what did he do, and is his conduct as a central witness important for a jury to hear to judge his credibility? The cases speak about, they're all over the place about whether this is cumulative, whether it's impeachment, whether it's corroborated by other witnesses. And as to the trial, we have described it at length in our briefs. We do not believe, we believe Abelman was the only person who gave testimony in that case that Vogel knew that Abelman's money was from drug dealing, and that none of the other transactions showed that, none of the other witnesses, nor did the bank records show that. And that's why it's a very complex case. I appreciate that. But it is also very important here that what Abelman did, and what he was doing during the Vogel trial, and what he didn't say, and what subsequently came out, be exposed to a jury so that they can make the judgment. The cases talk all the time about, you know, it's the jury that has to ultimately make this judgment. It's clear that we're dealing with a less than honest person. And that person was less than honest during the Vogel trial, and the government asserted that it was that person who was the person that was, because of this plea agreement, quote, on the team. Your Honor, at this point, I'll submit the case to you, absent any further questions from you. But could it be any? Thank you, counsel. All right. Thank you, Your Honors. The case just argued is submitted for decision. That concludes the Court's calendar for this morning.
judges: Schroeder, Clifton, Schiavelli